**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANTONIO CAMILO MENDEZ OREILLY,

       Petitioner,

   vs.

TODO BLANCHE, *et al.*,[1]

       Respondents.

Case No.: 2:26-cv-00278-GMN-EJY

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Antonio Camilo Mendez Oreilly's First Amended Petition for Writ of Habeas Corpus, (ECF No. 10).  Federal Respondents Pamela Bondi, Michael Bernacke, Todd Lyons, and Kristi Noem filed a Response, (ECF No. 16), to which Petitioner filed a Reply, (ECF No. 17).[2]

For the reasons discussed below, the Court GRANTS the Petition.

I.    **BACKGROUND**

Petitioner Antonio Camilo Mendez Oreilly is a native and citizen of Cuba who came to the United States in April 2024. (First Am. Pet. 1:2–3, ECF No 10).  Petitioner sought political asylum through the Customs and Border Protection One mobile application, ("CBP One App"), and was scheduled for an interview on May 11, 2024, at the San Ysidro port of entry. (*Id.* 1:3–5); (Notice to Appear at 7, Ex. A to Resp., ECF No. 16-1).  Petitioner was inspected at the San Ysidro port of entry and was thereafter paroled into the United States for two years. (First Am.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem.  The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

[2] Respondent John Mattos filed a separate Response, (ECF No. 13), indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought.

Pet. 1:5); (Notice to Appear at 7, Ex. A to Resp.).  Once present in the United States, Petitioner applied for a work permit, which was granted, and filed an application for residency through the Cuban Adjustment Act. (First Am. Pet. 1:5–6); (Notice to Appear at 7, Ex. A to Resp.).

On September 29, 2025, after an arrest for domestic assault, Petitioner was detained by Immigration and Customs Enforcement, ("ICE"), and was placed into removal proceedings. (First Am. Pet. 1:6–8).  Sometime in mid-October 2025, Petitioner appeared before an Immigration Judge ("IJ"), where he orally requested a bond hearing. (Reply 8:8–10, ECF No. 17).  Petitioner's request was denied, and he was told that he did not have a right to a bond hearing. (*Id.* 8:10–12).  Thereafter, on December 22, 2025, IJ D. Daugherty denied Petitioner's application for asylum and ordered Petitioner removed. (*See* Notice to Appear at 9–12, Ex. A to Resp.).  Additionally, the IJ granted withholding of removal as to Cuba. (*Id.* at 9); (First Am. Pet. 3:21–22).  Petitioner thereafter appealed the IJ's decision, and that appeal remains pending before the BIA. (First Am. Pet. 1:9–10).

## II.    <u>LEGAL STANDARD</u>

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C.A. § 2241(c)(3).  A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    DISCUSSION

Petitioner argues that he is entitled to injunctive relief because § 1226(a), not § 1225(b)(2), applies to him, and therefore his continued detention without a bond hearing violates both the Due Process clause of the Fifth Amendment and the Administrative Procedure Act ("APA"). (*See* First Am. Pet. 4:8–8:21).  Even if § 1225 applies, Petitioner argues that he is nonetheless entitled to a bond hearing under the Due Process clause of the Fifth Amendment. (*Id.* 8:24–16:24).  Petitioner further contends that ICE's policy of removing noncitizens to third countries with no notice or opportunity to seek fear-based protection violates his Fifth Amendment due process rights and constitutes arbitrary and capricious agency action under 5 U.S.C. § 706. (*Id.* 17:1–18:11).

Respondents first contend that the First Amended Petition is not ripe because Petitioner never requested a bond hearing, an allegation that Petitioner disputes. (Resp. 20:1–16, ECF No. 16); (Reply 8:8–10).  Respondents next argue that, under the BIA's decision in *Matter of Q. Li*, Petitioner is properly detained under § 1225(b)(2), not § 1226(a), and thus Petitioner's detention does not offend due process. (*See generally* Resp.).

The Court first addresses whether the First Amended Petition is ripe before turning to the merits.

### A.  The First Amended Petition is Ripe

Respondents assert that the First Amended Petition is not ripe because Petitioner never requested a bond hearing after being detained. (Resp. 20:1–16).  Petitioner disputes this claim on Reply, alleging that he did request a bond hearing during his first appearance before the IJ in October 2025. (Reply 8:7–18).  Respondents do not produce any evidence showing that Petitioner did not request a bond hearing at his first appearance before the IJ. (*See generally* Resp.); (Reply 8:12–15).

Here, the First Amended Petition was verified by Petitioner's oath, as required by 28 U.S.C. § 2242.  Where the response to a petition for writ of habeas corpus does not refute a petitioner's allegations, those allegations must be taken as true. *Carlson v. Landon*, 186 F.2d 183, 188 (9th Cir. 1950) (citing *Whitten v. Tomlinson*, 160 U.S. 231, 242 (1895)).  Here, Respondents have provided no evidence showing that Petitioner failed to request a bond hearing at his first appearance before the IJ, and the Court thus is required to accept Petitioner's allegation that he did as true.  Accordingly, the First Amended Petition is ripe, and the Court turns to the merits.

### B.  Legal Basis for Detention

Petitioner argues that he is detained under § 1226(a), not § 1225(b)(2), and therefore his continued detention without a bond hearing violates the Due Process clause of the Fifth Amendment. (First Am. Pet. 4:6–8:21).  Specifically, Petitioner contends that because he was paroled into the United States and detained by ICE in the interior of the country, he cannot be classified as an "arriving alien" and thus § 1225(b) does not apply. (*Id.* 6:1–14).  Respondents assert that Petitioner is lawfully detained under § 1225(b)(2) because he is a noncitizen who has not been admitted into the United States. (Resp. 8:23–9:5, ECF No. 16).  Respondents further contend that Petitioner's grant of humanitarian parole under § 1182(d)(5) did not constitute lawful admission to the United States. (*Id.* 8:1-5).  Rather, once his parole was terminated, Petitioner was returned to the custody from which he was paroled; here, custody under § 1225. (*Id.*) (citing *Matter of Li*, 29 I. & N. Dec. 66, 69–70 (BIA 2025)).  However, the Court need not reach the question of which statute applies to Petitioner's detention.  As explained below, the Court finds Petitioner's detention is unlawful regardless of the governing statute because his parole was terminated in violation of the Due Process Clause of the Fifth Amendment.

The Supreme Court recently explained the effect of a grant of humanitarian parole under § 1182(d)(5)(A) in *Jennings v. Rodriguez*, 583 U.S. at 288.  Regardless of whether a noncitizen

is detained under §§ 1225 or 1226, they may be released on parole "for urgent humanitarian reasons or significant public benefit." *Id.* (quoting 8 U.S.C.A. § 1182(d)(5)(A)).  Such parole, however, is not regarded as an admission of the noncitizen; rather, "when the purpose of the parole has been served," the noncitizen is returned to the custody from which he was paroled. *Id.*  The relevant regulations provide for automatic termination of parole without written notice "(i) upon the [noncitizen's] departure from the United States . . ., or, (ii) if not departed, at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)(i)–(ii). Otherwise, parole may be terminated with written notice to the noncitizen "upon accomplishment of the purpose for which parole was authorized" or when "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." § 212.5(e)(2)(i).

## C. Due Process

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.  Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

Several courts in the Ninth Circuit have concluded that when a noncitizen is paroled under § 1182, the government cannot summarily revoke that parole without offending due process. *See Velasquez-Chinga v. Noem*, No. 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026) (collecting cases).  Rather, due process for "parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been

served; (2) written notice of the reasons for termination; and (3) an opportunity to rebut the reasons given for termination." *Araujo v. LaRose*, No. 25-cv-02942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025) (citing *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025) (analyzing factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976))). While not binding, the Court finds the reasoning in these cases persuasive and adopts it for the reasons discussed below.

### 1. Due Process Protections in Revocation of § 1182 Parole

To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203–07 (9th Cir. 2022) ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened government interest in the immigration detention context.").[3] Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first *Matthews* factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. *See Matthews*, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most

[3] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207. However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)). The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Accordingly, the Court will apply the *Mathews* test here.

elemental of liberty interests." *Hamdi*, 542 U.S. at 529.  Further, the Supreme Court has recognized that a protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  In *Morrissey v. Brewer*, the Supreme Court explained that when placed on parole, "[t]he parolee has relied on at least an implicit promise that parole will only be revoked if he fails to live up to the parole conditions." 408 U.S. 471, 482 (1972).  Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Here, after inspection at the San Ysidro port of entry in April 2024, Petitioner was paroled into the United States for two years, was granted work authorization, and filed an application for residency through the Cuban Adjustment Act. (First Am. Pet. 1:5–10); (Notice to Appear at 7, Ex. A to Resp.).  These proceedings created a protectable expectation of Petitioner's continued liberty, and the Court thus finds that the first factor weighs in favor of Petitioner.

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." *Mathews*, 424 U.S. at 335.  Here, the initial determination that Petitioner should be paroled "reflects a determination by the government that [Petitioner] is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria.").  Civil immigration detention is "nonpunitive in purpose and effect[,]" and is justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690.  Thus, in order to re-

detain Petitioner, the government "must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." *Saravia*, 280 F. Supp. 3d at 1176.

The risk of erroneous deprivation of Petitioner's liberty interest is high where the government provides no justification for Petitioner's re-detention, and Petitioner has no opportunity to rebut that justification. *See Luo v. LaRose*, No. 25-cv-3848-LL-VET, 2026 WL 202872, at *3 (S.D. Cal. Jan. 27, 2026) (citing *Pinchi*, 792 F. Supp. 3d at 1035). This is especially true where the government need only show that the "purpose of [Petitioner's] parole has been served" in order to revoke that parole. 8 U.S.C. § 1182(d)(5)(A). The breadth of that standard affords the government substantial discretion to re-detain Petitioner, which compounds the risk of erroneous deprivation. *See Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025) (reasoning in the bond hearing context that "unreviewable" government direction to detain creates a high risk of erroneous deprivation). It follows that the value of additional procedural safeguards, such as notice and an opportunity to be heard, is likewise high.

Here, Petitioner was not notified that his parole was terminated, nor was he afforded any means to challenge the revocation of his parole. While Petitioner was arrested prior to the revocation of his parole for a misdemeanor charge of domestic battery, that does not obviate his due process rights. Even if it is likely that arrest may provide the government with a justification to revoke Petitioner's parole, the government must still inform Petitioner of that justification and provide Petitioner an opportunity to rebut it. Because the government did not do so here, the Court finds that the second *Mathews* factor weighs in favor of Petitioner.

The third and final *Matthews* factor considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the

government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208.  However, the government's interest in detaining Petitioner without a hearing is low. *See Morrissey*, 408 U.S. at 483 (explaining that "the State has no interest in revoking parole without some informal procedural guarantees").  Further, in "immigration court, custody hearings are routine and impose a 'minimal' cost." *Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *8 (E.D. Cal. Nov. 22, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094–95 (E.D. Cal. 2025)).  Indeed, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).  Accordingly, the Court concludes that the third *Mathews* factor also weighs in favor of Petitioner.

The Court thus finds that all three of the *Matthews* factors weigh heavily in favor of Petitioner, and the revocation of his parole without notice and an opportunity to be heard violates his rights under the Due Process Clause of the Fifth Amendment.[4]

Petitioner asks this Court to order his immediate release, or, in the alternative, to order that he receive a bond hearing immediately. (First Am. Pet. 20:4–10).  The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).  "Its mandate is broad with respect to the relief that may be granted." *Id.*  "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C.A. § 2243).

Here, the specific harm suffered by Petitioner was the termination of his parole without notice and an opportunity to be heard in violation of the Due Process Clause of the Fifth

---

[4] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether the revocation of Petitioner's parole violates the APA.

Amendment. Petitioner has been detained since September 29, 2025, despite receiving no process prior to his re-detention. (First Am. Pet. 1:5–8). Thus, "because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original). Further, a bond hearing would not adequately vindicate Petitioner's rights. Indeed, ordering a hearing while Petitioner remains detained would reward the government for failing to provide Petitioner any process before detaining him. *See id.* The Court therefore finds that the appropriate remedy here is immediate release subject to the conditions of Petitioner's prior parole.

**D. Third-Country Removal**

Petitioner next contends that ICE's policy of removing noncitizens to a third country with no notice or opportunity to seek fear-based protection violates his due process rights and constitutes arbitrary and capricious agency action in violation of the APA. (First Am. Pet 17:4–18:11). Respondents do not address this argument in their Response. (*See generally* Resp.).

As the Court previously found in *Cavieres Gomez v. Mattos*, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994, at *6–7 (D. Nev. Nov. 6, 2025), Petitioner has a due process right to receive meaningful notice and an opportunity to present a fear-based claim to an IJ before being deported to a third country. "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews*

*v. Eldridge*, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x. 724, 725 (9th Cir. 2016) (non-precedential memorandum disposition). Thus, in accordance with the ample case law above, Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country.[5]

Petitioner requests that the Court prohibit Respondents from removing him to a third country without providing Petitioner and his counsel notice and an opportunity for Petitioner to seek fear-based relief from removal. (First Am. Pet. 20:11–15). For the reasons discussed above, the Court grants this requested relief.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDRED** that Petitioner's First Amended Petition for Writ of Habeas Corpus, (ECF No. 10), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention by April 17, 2026, subject to the conditions of his prior parole. Respondents must notify Petitioner's counsel of the date and time of release in advance of Petitioner's release.

**IT IS FURTHER ORDERED** that, prior to any re-detention of Petitioner, Petitioner is entitled to (1) notice of the reasons for revocation of his parole and (2) an opportunity to rebut those reasons in a hearing before an impartial adjudicator.

---

[5] Because the Court finds that Petitioner succeeds on his argument under the Fifth Amendment Due Process Clause, it need not determine whether the stated policy violated the APA.

**IT IS FURTHER ORDERED** that the parties must file a Joint Status Report no later than April 20, 2026, to certify compliance with the Court's order.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem.  The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.  The Clerk of Court is kindly directed to serve a copy of this Order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

**DATED** this __16__ day of April, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court